**STOWELL v OHIO FUEL GAS COMPANY**

Ohio Appeals, 3rd Dist, Hancock Co

No 319.   Decided Jan 18, 1933

John E. Priddy, Findlay, for plaintiff in error.

Burket & Burket, Findlay, for defendant in error.

KINDER, J.

While the motion for a new trial and the petition in error stated various grounds, the real question to be determined here, is, did the trial court err in directing a verdict against the plaintiff and in favor of the defendant? Or, stated differently, was there a scintilla of evidence sustaining all of the essential elements of either of the charges of negligence which would require that the case be submitted to the jury, or was the plaintiff guilty of such contributory negligence as to preclude recovery?

By averment, admission and evidence, the following facts were established: That the plaintiff, for several years, was the manager for Warner and Steif, of a retail meat market located at 408 West Main Cross Street in the City of Findlay, Ohio; that about two years before the explosion occurerd in said building which caused the damage complained of, the plaintiff purchased the business and thereafter operated the same; that sometime thereafter, the bills for gas continued to come in the name of said firm, but upon the application of the plaintiff, the change from the firm to him individually was made by the gas company, and the plaintiff was, at the time of the explosion, a customer for natural gas furnished to him by the defendant; that the defendant company delivered its gas from its mains through street service lines to what is known as a curb box which was so constructed as to permit the passage of gas from the street service lines to what was known as the service line from the curb box, into the building, and also the shutting off of such gas at any time.

In the instant case, the curb box was located just within the curb line and about three feet from the east side of the building and extended under the pavement and under the building in a direct line to a point about thirty-five feet from the front of the building and about six inches north of a partition running from east to west through the building, where, through a "riser pipe" it was brought to a point six feet above the floor. To this riser pipe, the meter was attached at the bottom, and the pipes attached at the top conducted the gas through the building, which pipes were held rigid by what are described as clamps. The service pipe extending underneath the building was not rigid at the point where the riser pipe was attached to it.

It will be observed there are two specific charges or grounds of negligence set forth. Touching the first charge of negligence, based on the ownership and control by the defendant company of the service pipe extending under the building occupied by the plaintiff who was a lessee thereof holding under one Charles Diehlman, it may be said that there is not a scintilla of evidence showing such ownership or control; on the contrary, the evidence on the subject shows that this service line belonged to the owner of the building and that the obligation to keep said line in good condition, rested upon the "customer," the plaintiff.

Under the evidence, and the rules of the company, under which the plaintiff, upon his application, received natural gas from the defendant, there was no duty resting upon the defendant company to inspect the service line extending from the curb box into the building, but the defendant company did, under the rules have the right to inspect, and if the same was found defective or unsafe, it could refuse to deliver gas to said line.

The evidence further shows that for the four years during which the plaintiff was

engaged in business in the building, either as manager or owner of the business, no odor of gas was ever noticed by him, and that, up to the very instant of the explosion.

Under these circumstances, the court is unanimous in holding that as to this charge of negligence, the trial court did not err in directing a verdict for the defendant and against the plaintiff.

Turning to the charge of negligence based upon the acts of the employees of the defendant company in making the exchange of meters, the plaintiff, who was the only witness as to what was then done, says in substance, that one of the men stood on a motor and disconnected the "lead" pipe attached to the top of the meter, while the other stood on the floor, reached over the top of a belt with a long wrench and held the "riser pipe." Neither the service pipe nor the riser pipe extending therefrom to the meter were held to fixed position except as the floor would tend to that end. The plaintiff also testified that they shoved the "riser" pipe around so that they could disconnect the meter therefrom and estimates the distance that the riser pipe was moved, at six (6) inches. A wrench was used at the start and then the meter was disconnected by turning it with his hands.

The new meter was connected in the same way as was the meter which was removed: the bottom of the meter to the "riser" pipe and the top to the lead pipes that went out through the building. The two meters were not of the same size, the new meter being the larger, but it is not said or shown that the connections were different. The operation took but a very short time, estimated by the plaintiff as about five minutes.

That the service pipe was old, eaten through by rust, and full of holes, and that the damage was caused by an explosion of natural gas, is established by the pleading of plaintiff. The condition of the pipe, however, is not shown to have been known by the defendant. The plaintiff himself testifies that during the three years or more of his occupancy of the building, he had noticed no odor of gas, and that, down to the instant of the explosion.

The law presumes that persons upon whom the duty of exercising care is thrown, do, in fact, exercise such care and while the burden of proof is upon the one alleging lack of care, negligence may be shown either by direct evidence or by proof of facts and circumstances from which a reasonable inference of lack of care can be

drawn; however, negligence is never presumed from the mere fact of an accident and resulting injury.

There is no direct evidence that what was done in the exchange of meters was not done in the usual manner or that it was not a safe method of procedure; nor is there any direct evidence of any causal connection between what was done in the exchange of meters and the explosion occurring forty six hours later.

To find a scintilla of evidence to hold the defendant, it would be necessary to infer that what was done in making the exchange of meters so disturbed the service pipe as to permit the escape of natural gas therefrom and to collect under the building and, connected with the explosion, to infer further from this that what the employees did constituted negligence upon the part of the company. This would be basing an inference on an inference, which cannot be done. **107 Oh St, 107. 114 Oh St, 423.**

The doctrine of **res ipsa loquitor** having no application here, for the defendant neither owned nor controlled either the service pipe or the premises upon which it was located, the natural inference would be that the defective service pipe was the proximate cause of the injury complained of herein.

A majority of the court is of opinion that the trial court did not err in directing a verdict for the defendant and against the plaintiff on the second charge of negligence in the petition. In this opinion, Judge Crow does not concur. However, if a majority of the court is in error touching the second ground of negligence, there yet remains the question of contributory negligence.

By the averment in his pleading, that the pipe used to conduct its product, natural gas, into said building, "was defective and worn out and had, by reason of rust and deterioration, holes and orifices therein through which said natural gas could and did escape into and under the aforesaid building and the floor thereof, and there did accumulate and did explode, which explosion was the proximate cause of the damage hereinbefore stated and hereinafter set forth more particularly."

By the evidence introduced by plaintiff it is shown that he was a consumer of natural gas in the building in which the explosion occurred, and that as such consumer he was charged with the maintenance of the pipes which were owned by one Charles Diehlman his landlord. True, it is also charged that the acts of the employes

of the defendant company also contributed to the explosion by the manner in which they operated in changing the meters in the building, so that a situation is developed by the admissions contained in plaintiff's pleading and in the evidence introduced by him, that his negligence touching the pipe which ran under the building he occupied, by his failure to keep the same in condition, contributed proximately to the explosion and consequent injury, and the court is unanimous in the opinion that in this situation, the trial court was fully justified in directing a verdict in favor of the defendant and against the plaintiff. This question was not presented to, or decided by, the court in reviewing the first trial of this case.

However, counsel for plaintiff invokes the doctrine, if it be a doctrine, of "the law of the case." He specifically tenders the bill of exceptions at the first trial, and challenges the attention of the court to its record in the reversal of the first trial.

It needs no authority to support the proposition that a court will take judicial notice of its own record.

The record of the Court of Common Pleas is required to be made up from the petition, process, return, pleadings subsequent thereto, verdicts, orders, judgments and all material acts and proceedings of the court, §11607 GC, and a bill of exceptions becomes a part of the record when it is filed and allowed and signed by the trial court, and this without any order allowing it as a part of the record, §11571 GC. See also, **Smith v Board of Education, 27 Oh St, page 44** and following.

This record, either complete or composed of the several items provided for, namely, the original papers, and so forth, was required to be filed with the petition in error, and they thereby became a part of the record in this court.

"The law of the case" is defined in the case of **Gohman v The City of St. Bernard, 111 Oh St,** beginning at page 726. A reading of this case will show a denial of the availability of "the law of the case" as a binding rule, but it is declared to be a rule of procedure, disciplinary in its character and used for the purpose largely, to assure that inferior courts will conform to the decisions of reviewing courts. So the question arises whether this court will, under the circumstances of this case, apply this disciplinary rule, upon the claim made by counsel that the pleadings were the same, the evidence identical, and that this court, having found that there was no error in the first trial in the refusal of the trial court to direct a verdict at the conclusion of the plaintiff's evidence, and this upon the presumption that this court did its duty under the statute, and passed upon all the questions raised.

This court has carefully examined all the pleadings, the record, and has compared the two bills of exceptions, and find that the trials were had upon identical issues, but the plaintiff's evidence was not identical as claimed; the evidence as to what was done in changing the meter, was substantially the same, the only difference being the distance the riser pipe was moved. The rules of the defendant company were not offered by the plaintiff at the first trial.

The mandate would advise the trial court in the second trial, only of the fact that the case was reversed for error in overruling the motion of the defendant below for a new trial, upon the ground that the verdict was against the weight of the evidence.

We have scanned the record in the last case, carefully and find no suggestion made to the trial court in any form, touching any other claimed error in the trial court. So far as the record shows, the trial court in the second trial may have been entirely ignorant of the action of this court based upon the first trial, except that which is contained in the mandate. The court can see no necessity, in this case, of applying the procedural rule of "the law of the case," hence the judgment of the Court of Common Pleas will be affirmed at costs of plaintiff in error.

Before
JUDGES CROW, KLINGER and KINDER.